IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| CHATTOOGA CONSERVANCY, INC. )<br>CRAIG PROBST, and NANCY PROBST, )<br>)<br>    Plaintiffs, )<br>v. )<br>)<br>HIGH HAMPTON LAND, LLC, )<br>HIGH HAMPTON RESORT, LLC, )<br>DANIEL COMMUNITIES, LLC, and )<br>DANIEL COMMUNITIES MANAGEMENT )<br>CORPORATION, )<br>)<br>    Defendants. ) | **CIVIL ACTION**<br><br>**No. 1:21-CV-239** |

For their Complaint against Defendants High Hampton Land, LLC, High Hampton Resort, LLC, Daniel Communities, LLC, and Daniel Communities Management Corporation ("Defendants"), Plaintiffs Chattooga Conservancy, Craig Probst, and Nancy Probst ("Plaintiffs") allege the following:

**STATEMENT OF JURIDICTION AND VENUE**

1. This case constitutes a citizen's suit under the federal Clean Water Act pursuant to 33 U.S.C. § 1365 which vests federal subject matter jurisdiction in this Court pursuant to 33 U.S.C. § 1365(a).

2. The pollutant discharge sources which give rise to this action are located in Jackson County, North Carolina, placing venue in this Court pursuant to 33 U.S.C. § 1365(c)(1).

3. More than sixty (60) days prior to the filing of this Complaint, Plaintiffs provided ante-litem notice to Defendants and others as required by 33 U.S.C. § 1365(b)(1)(A) pursuant to a letter dated April 14, 2021. A copy of that ante-litem notice letter, with copies of receipts thereof, is attached hereto as **Exhibit A**.

1

4. Pursuant to 33 U.S.C. § 1365(c)(3), Plaintiffs will serve a copy of this Complaint upon the Attorney General of the United States and the Administrator of the United States Environmental Protection Agency.

5. This Court has supplemental jurisdiction over the related state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367(a).

6. This Court has personal jurisdiction over all Defendants.

## PARTIES AND SITE SETTING

7. Plaintiff Chattooga Conservancy is a non-profit membership association incorporated in 1994 and has approximately 600 members. Its purpose is to advance the protection and enjoyment of the natural attributes of the Chattooga River, is tributaries, and their watersheds.

8. The Chattooga River was designated as a national Wild and Scenic River by the U.S. Congress in 1974 based upon its wild and scenic values and is also an Outstanding National Resource Water.

9. Fowler Creek is a tributary of the upper Chattooga River and has been designated as a Class B trout stream, High Quality Water/ Outstanding Resource Water by the State of North Carolina for water quality protection purposes.

10. Fowler Creek lies within Jackson County, North Carolina in the vicinity of the unincorporated village of Cashiers.

11. Both Fowler Creek and the upper Chattooga River have historically supported trout fisheries and have been prized for their water clarity and pristine nature.

12. Plaintiffs Craig and Nancy Probst are residents of the State of North Carolina and are members of the Chattooga Conservancy.

13. Craig Probst is and has been the title holder of real property on and within Fowler Creek at all times relevant to the subject matter of this action. The property contains a home.

14. Craig Probst is the husband of co-plaintiff Nancy Probst, and they are frequent occupants of that home.

15. The Probsts place particular value on Fowler Creek as it flows upon and in the vicinity of their property.

16. But for the discharges of pollutants originating from the High Hampton development which are the subject matter of this action, the Probsts have particularly enjoyed the pristine water quality and clarity of the waters in Fowler Creek and its aquatic habitat.

17. Defendant High Hampton Land, LLC, is a Delaware limited liability company which is authorized to and at all times relevant hereto has been doing business in the State of North Carolina.

18. Defendant High Hampton Resort, LLC, is a Delaware limited liability company which is authorized to and at all times relevant hereto has been doing business in the State of North Carolina.

19. Defendant Daniel Communities, LLC, is a Delaware limited liability company which is authorized to and at all times relevant hereto has been doing business in the State of North Carolina.

20. Defendant Daniel Communities Management Corporation, is a Delaware corporation which is authorized to and at all times relevant hereto has been doing business in the State of North Carolina.

21. Defendants are affiliates of one another and are and have been engaged in the development and redevelopment of property containing at least 684 acres in Jackson County,

North Carolina in the headwaters of Fowler Creek. That property and Defendants' development project will be referred to hereafter as "High Hampton," the "High Hampton property," the "High Hampton development," the "High Hampton project," the "project," or the like.

22. The High Hampton property is located in an area of the Western North Carolina mountains characterized by sloped (often steeply-sloped) terrain and high rainfall amounts, frequencies, and intensities.

## HIGH HAMPTON HISTORY

23. The High Hampton property was originally developed to a limited degree in 1922 and years thereafter as a rustic mountain resort by E.L. Mckee.

24. Until the property was acquired by Defendants in the Fall of 2017, it was owned and operated by the Mckee family.

25. Prior to Defendants' acquisition of and development activity at High Hampton, it consisted of a lodge, some surrounding cottages, two small lakes (Hampton Lake and Jewel Lake) fed by Fowler Creek, a modest golf course, tennis courts, and hiking trails in undeveloped portions of the property.

## HIGH HAMPTON DEVELOPMENT PLANS, REGULATORY STANDARDS, ACTIVITIES, AND RAMIFICATIONS

26. Defendants' development plans and activities as initiated following its acquisition of High Hampton in the Fall of 2017 include the reconstruction and expansion of the golf course, the construction of new resort facilities, and the creation of at least 243 residential lots for construction of new houses, garages, driveways, and associated infrastructure (including septic fields in many instances) on mostly steep terrain in the Fowler Creek watershed.

4

27. Related infrastructure development by Defendants includes construction of miles of new roads on formerly undeveloped portions of the property and construction of a sewage treatment system to serve portions of the property.

28. In anticipation of their development activities, Defendants began the process of applying to the U.S. Army Corps of Engineers ("ACOE") for a permit to allow for dredging and/or filling of streams and wetlands subject to the jurisdiction of the federal Clean Water Act pursuant to 33 U.S.C. § 1344 (also known as Section 404 of the Clean Water Act).

29. Before the process was completed and a permit was issued by the ACOE on April 16, 2020, Defendants caused development activity, including significant land disturbing activities involving mass grading, to commence in 2018.

30. The High Hampton development is a common plan of development subject to a National Pollutant Discharge Elimination System general permit NCG010000 ("NPDES Permit") and associated regulations issued by North Carolina pursuant to delegated Clean Water Act permit authority under 33 U.S.C. § 1342 (also known as Section 402 of the Clean Water Act). A copy of the NPDES Permit is attached hereto as **Exhibit B**.

31. Defendants are responsible for compliance with all terms of the NPDES permit for the entire High Hampton development, including development of individual residential lots and associated construction by purchasers of such lots. Those purchasers and their contractors are also required to comply with the terms of the NPDES permit.

32. Regulatory requirements applicable to erosion and sedimentation control at the High Hampton development and its off-site impacts include requirements under the North Carolina Sedimentation Pollution Control Act, North Carolina water quality standards, and Jackson County, North Carolina erosion and sedimentation control regulations.

33. Common law requirements applicable to trespass, nuisance, and surface water apply to the High Hampton development and its impact on off-site streams and property rights.

34. Development activities at High Hampton which began in 2018 and are continuing have resulted and continue to result in substantial and repeated discharges of sediment into Fowler Creek on and downstream of the High Hampton property in violation of the federal Clean Water Act, the NPDES Permit, North Carolina law, and associated erosion and sedimentation control requirements and water quality standards.

35. Those development activities and the sedimentation of Fowler Creek caused by them have resulted and continue to result in discoloration of Fowler Creek's previously pristine water clarity on and downstream of the High Hampton property.

36. Those sedimentation and discoloration impacts have reached the upper Chattooga River at and downstream of Fowler Creek's confluence with the Chattooga River.

37. The ACOE permit under the Clean Water Act was issued on April 16, 2020 subject to a set of conditions issued by the North Carolina Department of Water Resources ("NCDWR") on January 21, 2020 pursuant to the Clean Water Act state water quality certification provisions of 33 U.S.C. § 1341 (also known as Section 401 of the Clean Water Act. A copy of the NCDWR Section 401 water quality certification and conditions letter is attached hereto as **Exhibit C**.

38. The ACOE permit and associated Section 401 conditions as stated in Exhibit B allowed only for the deposit of material, including sediments, into specifically limited portions of streams and wetlands on the High Hampton property. Condition 9 of the NCDWR Section 401 certification letter stated: "No waste, spoil, solids, or fill of any kind shall occur in wetlands or waters beyond the footprint of the impacts (including temporary impacts) as authorized under this Certification."

6

Case 1:21-cv-00239-MR-WCM   Document 1   Filed 09/03/21   Page 6 of 15

39. The ACOE permit and associated Section 401 conditions as stated in the NCDWR Section 401 certification letter at Condition 13 also require complete compliance with the terms of the NPDES Permit.

40. Part I of the NPDES Permit states: "The discharges allowed by this General Permit shall not cause or contribute to violations of North Carolina Water Quality Standards for surface waters and wetlands."

41. Part II, Section B.1 of the NPDES Permit states: "E&SC Measures shall be designed and constructed to prevent off-site sedimentation damage." E&SC refers to erosion and sedimentation control.

42. Part IV, Section 6 of the NPDES Permit states: "The permittee shall take all reasonable steps to minimize or prevent any discharge in violation of this general permit which has a reasonable likelihood of adversely affecting human health or the environment."

43. Part IV, Section 10 of the NPDES Permit states: "The issuance of this general permit does not … authorize any injury to private property."

44. North Carolina's Water Quality Standards for surface waters designated as Class C waters provide at subsection 15 NCAC 2B.0211(12): "**Oils, deleterious substances, or colored or other wastes: only such amounts as shall not** render the waters injurious to public health, secondary recreation, or to aquatic life and wildlife, or **adversely affect** the palatability of fish, **aesthetic quality**, or impair the waters for any designated uses. **For the purpose of implementing this Rule**, oils, deleterious substances, or **colored or other wastes shall include substances that cause** a film or sheen upon or **discoloration** of the surface of the water or adjoining shorelines, as described in 40 CFR 110.3(a)-(b)." (emphasis added)

45. These Class C water quality standards apply to Fowler Creek and the upper Chattooga River as Class B, trout, outstanding resource/high quality waters.

46. Pursuant to regulations adopted under the federal Clean Water Act at 40 CFR § 131.12(3), the historically high-quality waters of the Chattooga River and its tributaries including Fowler Creek shall be maintained and protected without degradation.

47. The sedimentation and discoloration of Fowler Creek and the upper Chattooga River caused by the High Hampton development have resulted and continue to result from inadequate erosion and sedimentation control design and implementation for which Defendants are responsible.

48. The erosion and sediment controls utilized at the project site have proven time and time again to be ineffective in preventing sedimentation and discolored waters from being discharged into Fowler Creek from land disturbance areas (many of them on steep slopes) of the High Hampton development project during and after heavier rainfall events which are a common occurrence in the area of High Hampton.

49. Those discharges have resulted and continue to result in sedimentation and discoloration of the previously pristine waters of Fowler Creek and the upper Chattooga River.

50. Those discharges have resulted in a) sedimentation and discoloration of and from Hampton Lake and Jewel Lake on the High Hampton property which are fed by branches of Fowler Creek, b) sedimentation and discoloration of and from Chattooga Club Lake (also known as Lake Chattooga) which lies downstream of the High Hampton property on Fowler Creek, c) sedimentation and discoloration of Fowler Creek as it continues downstream of Chattooga Club Lake to and beyond the Probst property, and d) sedimentation and discoloration of the upper Chattooga River at and downstream of its confluence with Fowler Creek.

51. Attached hereto as **Exhibit D** is a photograph showing discoloration of Fowler Creek at its confluence with the Chattooga River (which was clear above the confluence), with such discoloration being the result of sediment and discolored water discharges into Fowler Creek from the High Hampton development.

52. As a result of substantial sedimentation of Chattooga Club Lake caused by the High Hampton development and the failure of Defendants to cause the removal of such sediments therefrom to date, such sedimentation serves as a continuing source of sedimentation and discoloration of Fowler Creek and the upper Chattooga River downstream of Chattooga Club Lake for which Defendants are responsible.

53. Although, on information and belief, Defendants have entered an agreement with the Chattooga Club property owners association pursuant to which Defendants provided funding for purposes of dredging such sediment in part or whole from Chattooga Club Lake, Defendants have failed to cause such dredging to take place to date.

54. At such time in the future as such dredging of Chattooga Club Lake takes place, it is inevitable that dredging of the sediments resulting from Defendants' development activities will exacerbate the sedimentation and discoloration of Fowler Creek downstream from Chattooga Club Lake for which Defendants are and will continue to be responsible.

55. As of the date of the filing of this Complaint, High Hampton development activities in the Fowler Creek watershed which are the subject of the above-referenced laws, regulations, and permits are continuing.

56. Although the redevelopment and expansion of the golf course at High Hampton has been completed, much of the development of infrastructure (including roads and sewage treatment

system) and development of residential lots (including construction of houses, driveways, and septic fields on those lots) has yet to be completed.

57. Stabilization of various areas of High Hampton in the Fowler Creek watershed which have been subjected to land disturbance to date has yet to be completed, and many areas (including numerous residential lots on steep slopes) will be the subject of substantial additional land disturbance in the days, months, and years to come.

58. As recently as the weeks of August 16 and 30, 2021, heavy rainfall on disturbed areas of the High Hampton development site resulted in discharges of sediment into Fowler Creek on the High Hampton property, discoloration of Hampton Lake and Jewel Lake, and discoloration of Fowler Creek downstream from the High Hampton property, including Fowler Creek downstream of Chattooga Club Lake and at the Probst property.

59. Similar discharges of sediment into Fowler Creek and resulting discoloration of Fowler Creek on and downstream of the High Hampton property and Chattooga Club Lake are reasonably likely to continue in the future as a result of past and continued High Hampton development activities and past and continued inadequate erosion and sedimentation control measures at the High Hampton development for which Defendants are responsible. These continuing adverse impacts are reasonably likely to include adverse impacts on the upper Chattooga River.

60. Numerous point sources as defined in the federal Clean Water Act exist, have existed, and will exist in the future on the High Hampton property (including point sources in and adjacent to its development areas and at discharge points from Hampton Lake and Jewel Lake) and at discharge points from Chattooga Club Lake, which point sources have discharged and are reasonably likely to continue to discharge sediment-impacted storm water resulting from High

Hampton development activities for which Defendants are and will continue to be responsible into Fowler Creek and the upper Chattooga River in violation of the federal Clean Water Act.

## COUNT ONE – CLEAN WATER ACT VIOLATIONS

61. The allegations contained in paragraphs 1 – 60 above are incorporated by reference in this count as if fully stated herein.

62. Development activities at High Hampton, for which Defendants have and will continue to have responsibility, have and will continue to result in repeated and continuing violations of effluent standards and limitations under the federal Clean Water Act as defined in its citizen suit provisions at 33 U.S.C. § 1365(f).

63. Plaintiffs have interests in Fowler Creek and the Chattooga River which have been and continue to be adversely affected by such violations and therefore have standing to bring this action pursuant to the citizen suit provisions of 33 U.S.C. § 1365.

64. Defendants have liability to Plaintiffs under the citizen suit provisions of the federal Clean Water Act for abatement of Defendants' violations of the Clean Water Act and its associated standards as applicable to this case, restoration of Fowler Creek and the upper Chattooga River affected by such violations, civil penalties, and Plaintiffs' litigation costs including reasonable attorney fees, and for such other relief as is just and proper.

## COUNT TWO – NORTH CAROLINA SEDIMENTATION POLLUTION CONTROL ACT VIOLATIONS

65. The allegations contained in paragraphs 1 – 64 above are incorporated by reference in this count as if fully stated herein.

66. Pursuant to N.C. General Statutes § 113A-57(3) within the North Carolina Sedimentation Pollution Control Act, Defendants have been and continue to be responsible for the conduct of land-disturbing activity and the installation and maintenance of erosion and

sedimentation control devices and practices sufficient to retain the sediment generated by such land-disturbing activity within the boundaries of the High Hampton property.

67. Defendants have failed and continue to fail to cause land-disturbing activity and erosion and sedimentation controls to be installed and maintained in the High Hampton development so as to retain sediment generated by such land-disturbing activity away from Fowler Creek and its tributaries and within the bounds of the High Hampton property.

68. As a result of such violations of the North Carolina Sedimentation Pollution Act, Defendants are obligated to cause the abatement of such violations and the restoration of Fowler Creek and the upper Chattooga River affected by such violations.

69. As a result of such violations of the North Carolina Sedimentation Pollution Act and the off-site sedimentation resulting and threatened therefrom, Defendants and their privies, including but not limited to their lot purchasers and their respective contractors, may be subject to issuance of stop-work orders pursuant to the North Carolina Sedimentation Pollution Act.

70. Pursuant to § 113A-66 of the North Carolina Sedimentation Pollution Control Act, Plaintiffs have a civil cause of action for relief thereunder against Defendants by reason of the above-referenced violations of such act.

## COUNT THREE – TRESPASS AND NUISANCE
### (Probsts)

71. The allegations contained in paragraphs 1 – 70 above are incorporated by reference in this count as if fully stated herein.

72. Substantial sedimentation and discoloration of Fowler Creek at the Probst property has resulted and continues to result from the High Hampton development for which Defendants are and will continue to be responsible.

12

73. Such sedimentation and discoloration of Fowler Creek at the Probst property constitute an unreasonable interference with their property rights, constituting trespass, and nuisance and to which aggravating circumstances apply with respect to Defendants' acts and omissions causing such trespass and nuisance.

74. As a result of Defendants' acts and omissions, the Probsts are entitled to recover damages, including nominal damages, actual damages, and additional relief against Defendants.

## COUNT FOUR – PUNITIVE DAMAGES

75. The allegations contained in paragraphs 1 – 74 above are incorporated by reference in this count as if fully stated herein.

76. Defendants have acted and continue to act willfully, wantonly, fraudulently, and/or maliciously in conscious disregard of their duties as set forth herein.

77. As a result of the willful, wanton, malicious, and/or fraudulent nature of the Defendants' conduct in this matter, Plaintiffs are entitled to an award of punitive damages pursuant to N.C. Gen. Stat. §1D-1.

## RESERVATION OF RIGHTS

78. Plaintiffs reserve the right to seek future leave of this Court to join such additional defendants as may be appropriate, including but not limited to the High Hampton property owners association and purchasers of residential lots and their contractors who conduct future land disturbing activities at the High Hampton development.

WHEREFORE, Plaintiffs respectfully pray for the following relief:

1. Under Count One, that judgment enter against Defendants ordering them to abate and prevent the violations that are the subject of this action, restore the waters of Fowler Creek and the upper Chattooga River to their historically pristine condition free from the adverse impacts

of sedimentation and resulting discoloration caused by such violations, pay civil penalties, pay Plaintiffs' litigation costs, including reasonable attorney's fees, and such other and further relief as is just and proper;

2. Under Count Two, that judgment enter against Defendants ordering them to abate and prevent the violation of the North Carolina Sedimentation Pollution Act, restore the waters of Fowler Creek and the upper Chattooga River to their historically pristine condition free from the adverse impacts of sedimentation and resulting discoloration caused by such violation, pay civil penalties, pay damages caused by the violations which are the subject of this action, pay Plaintiffs litigation costs, including reasonable attorney's fees, and such other relief as is just and proper;

3. Under Count Three, that judgment enter against Defendants for damages in an amount to be established at trial, and such other relief as is just and proper.

4. Under Count Four, that judgment enter against Defendants for punitive damages in an amount to be established at trial, and such other relief as is just and proper.

5. Such other relief as is just and proper.

Respectfully submitted, this 3rd day of September, 2021.

*/s/ Ryan M. Arnold*
Ryan M. Arnold (N.C. Bar No. 52010)
TAYLOR ENGLISH DUMA LLP.
5208 Six Forks Road, Suite 200
Raleigh, North Carolina 27609
984.232.2992
rarnold@taylorenglish.com

*/s/ Craig K. Pendergrast*
Craig K. Pendergrast (Georgia Bar No. 571155)
*(Motion for Admission Pro Hac Vice Forthcoming)*
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
770.434.6868
cpendergrast@taylorenglish.com

*Attorneys for Plaintiffs*