STATE OF NORTH CAROLINA
DEPARTMENT OF ENVIRONMENTAL QUALITY
DIVISION OF ENERGY, MINERAL, AND LAND RESOURCES
**GENERAL PERMIT NO. NCG010000**

TO DISCHARGE STORMWATER UNDER THE
NATIONAL POLLUTANT DISCHARGE ELIMINATION SYSTEM

for:

# Construction Activities that are also Subject to the North Carolina Sedimentation Pollution Control Act of 1973

In compliance with the provisions of North Carolina General Statute (G.S.) 143-215.1, other lawful standards and regulations promulgated and adopted by the North Carolina Environmental Management Commission and the Federal Water Pollution Control Act, as amended, this permit is hereby issued to all owners or operators, hereinafter permittees, which are covered by this permit as evidenced by receipt of a Certificate of Coverage by the Environmental Management Commission to allow the **discharge of stormwater to the surface waters of North Carolina** or to a separate storm sewer system conveying discharges to surface waters in accordance with the terms and conditions set forth herein.

**Coverage under General Permit No. NCG010000, hereafter referred to as NCG01, is applicable to:**

All owners or operators of stormwater point source discharges associated with construction activities including clearing, grading, or excavation activities resulting in the disturbance of land greater than or equal to one acre, or that are part of a common plan of development of that size *that are also subject to the North Carolina Sedimentation Pollution Control Act of 1973 (SPCA)*, are hereby authorized to discharge stormwater to the surface waters in accordance with the terms and conditions set forth herein. Failure to receive coverage under this permit or violations of any of the conditions listed may result in assessment of state or federal civil or criminal penalties for each day of each violation.

The General Permit shall become effective on April 1, 2019.

The General Permit shall expire at midnight on **March 31, 2024**.

Signed this day March 29, 2019.

S. Daniel Smith
Interim Director, Division of Energy, Mineral and Land Resources
By the Authority of the Environmental Management Commission

# TABLE OF CONTENTS

**PART I          NCG01 PERMIT COVERAGE**

**PART II          STORMWATER POLLUTION PREVENTION PLAN**

**Section A:          Required Components of the Erosion and Sedimentation Control Plan**

    1.   Location Information

    2.   Narrative and Construction Sequence

    3.   General Site Features

    4.   Site Drainage Features

    5.   Plans Showing E&SC Measures

    6.   Calculations

    7.   Vegetative Stabilization Shown on Plans

    8.   Documentation

**Section B:          Design and Construction Standards for Erosion and Sediment Control Measures**

    1.   Objective of E&SC Measures

    2.   Area to Be Covered by the E&SC Plan

    3.   Angle for Graded Slopes

    4.   Upslope Areas

    5.   Design Standard for E&SC Measures

    6.   Calculation Method

    7.   Stormwater Outlets

    8.   Stormwater Conveyances

    9.   Sediment Basin Outlet Structures

    9.   Lower Portions of the Site

**Section C:          Additional Design and Construction Standards in High Quality Water (HQW) Zones**

    1.   Extent of the HQW Zone

    2.   Disturbed Area Limits in HQW Zones

    3.   Additional Sediment Basin Requirements in HQW Zones

    4.   Open Channels in HQW Zones

**Section D:          Construction Activity Buffers**

    1.   Buffers in Non-Trout Waters

    2.   Buffers in Trout Waters

**Section E:**     **Ground Stabilization**

    1.    Ground Stabilization Timelines

    2.    Permanent Ground Stabilization Timeline

**Section F:**     **Materials Handling**

    1.    Polyacrylamides (PAMS) and Flocculants

    2.    Equipment Fluids

    3.    Waste Materials

    4.    Herbicide, Pesticide, and Rodenticides

    5.    Concrete Materials

    6.    Earthen Material Stock Piles

**Section G:**     **Operation and Maintenance**

    1.    Plan Deviations

    2.    Operation and Maintenance

    3.    Corrective Actions

    4.    Maintenance of Sediment Basins

    5.    Bypass of E&SC Measures

    6.    Upset of E&SC Measures

    7.    Compliance with the Turbidity Standard

**PART III      SELF-INSPECTION, RECORDKEEPING AND REPORTING**

**Section A:**     **Self-Inspection**

**Section B:**     **Recordkeeping**

    1.    E&SC Plan Documentation

    2.    Additional Documentation to be Kept on Site

    3.    Documentation to be Kept for Three Years

**Section C:**     **Reporting**

    1.    Occurrences that Must be Reported

    2.    Reporting Timeframes and Other Requirements

**PART IV      STANDARD CONDITIONS FOR NPDES STORMWATER GENERAL PERMITS**

**Section A:**     **Compliance and Liability**

    1.    Continuation of Previously Permitted Projects

    2.    Projects Submitted Prior to this Permit's Effective Date

    3.    Duty to Comply

    4.    Non-Stormwater Discharges

5. Test Procedures

6. Duty to Mitigate

7. Need to Halt or Reduce Not a Defense

8. Civil and Criminal Liability

9. Oil and Hazardous Substance Liability

10. Property Rights

11. Severability

12. Duty to Provide Information

13. Inspection and Entry

14. Penalties for Tampering

15. Penalties for Falsification of Reports

16. Onshore or Offshore Construction

17. Duty to Reapply

18. Planned Changes

19. Anticipated Noncompliance

**Section B:** **Permit Administration**

1. General Permit Expiration

2. Transfers

3. When an Individual Permit May be Required

4. When an Individual Permit May be Requested

5. Impacts or Potential Impacts to Surface Waters or Wetlands

6. Signatory Requirements

7. General Permit Modification, Revocation and Reissuance, or Termination

8. Certificate of Coverage Actions

9. Annual Administering and Compliance Monitoring Fee Requirements

10. Availability of Reports

11. Omissions

**PART V** **DEFINITIONS**

# PART I – NCG01 PERMIT COVERAGE

This permit applies to all owners or operators of stormwater discharges associated with construction activities such as clearing, grading, and excavation, that result in the disturbance of a land area greater than or equal to one acre, or that are part of a common plan of development of that size or greater *that are also subject to the North Carolina Sedimentation Pollution Control Act of 1973 (SPCA).* This permit may also be issued to stormwater discharges from like activities deemed by the Division of Energy, Mineral, and Land Resources (DEMLR) to be similar to these operations in process or stormwater discharges. This permit shall not apply to land-disturbing activities that are covered under the NCG020000 (Mining Activities) permit or the NCG120000 (Landfills) permit.

The SPCA requires that the persons engaged in subject construction activities develop and adhere to an Erosion and Sedimentation Control (E&SC) Plan. The Sedimentation Control Commission and DEMLR have created and adopted a North Carolina Erosion and Sediment Control Planning and Design Manual describing recommended sedimentation control techniques for construction activities.

A person seeking coverage under this permit shall take the following steps in the following order:

1. Develop an E&SC plan that adheres to the SWPPP requirements of this permit, the SPCA and 15A NCAC 04B .0101-.0132. The North Carolina Erosion and Sediment Control Planning and Design Manual shall be used as guidance in meeting the applicable requirements.

2. Obtain approval of the E&SC plan by either DEMLR or the appropriate state delegated local entity (hereafter known as the "E&SC plan authority").

3. Submit an electronic Notice of Intent (e-NOI) to DEMLR with documentation of the E&SC plan approval scanned and uploaded. The e-NOI is available at https://deq.nc.gov/NCG01. In addition, pay the general annual permit fee provided for in § 143-215.3D. DEMLR shall email the COC within three business days (or 24 business hours for a project being reviewed under DEMLR's Express review program) after the submittal of a complete and correct e-NOI and the receipt of the general permitting fee.

4. Commence the construction activity after receipt of the COC.

5. Abide by the conditions of both the NCG01 permit and the E&SC plan until completion of the construction activity and establishment of permanent ground stabilization.

6. Contact the E&SC plan authority after construction is complete and the site is permanently stabilized, contact the E&SC plan authority for the final/close out inspection of the E&SC plan.

7. Submit an electronic Notice of Termination (e-NOT) with a scan of the close-out inspection report uploaded. The e-NOT is available at https://deq.nc.gov/NCG01. DEMLR shall email confirmation of the close-out of the COC within three business days after the submittal of a complete and correct e-NOT.

The discharges allowed by this General Permit shall not cause or contribute to violations of North Carolina Water Quality Standards for surface waters and wetlands (15A NCAC 02B .0200). Discharges allowed by this permit must meet all applicable water quality certification or permit requirements as outlined in 15A NCAC 02H .0500 and 02H .1300. This permit does not relieve the permittee from responsibility for compliance with any other applicable federal, state, or local law, rule, standard, ordinance, order, judgment, or decree. This General Permit does not cover any other point source discharge to surface waters of the state, nor does it cover activities or discharges that are covered by an individual NPDES permit.

Any owner or operator of a subject construction activity not wishing to be covered or limited by this General Permit may apply for an individual NPDES permit in accordance with NPDES procedures in 15A NCAC 02H .0100, stating the reasons supporting the request. Any application for an individual permit

should be made at least 180 days prior to the time the permit is needed unless waived by the Director (see Part IV Section B of this permit).

# PART II – STORMWATER POLLUTION PREVENTION PLAN

The Stormwater Pollution Prevention Plan for this permit shall include the approved **Erosion and Sedimentation Control (E&SC) Plan** as well as any requirements in this Part that exceed the approved E&SC Plan. Items that are required in the SWPPP but are not part of the approved E&SC Plan may include, at a minimum, Section E, Item (2) [*Required Timeframes for Temporary Ground Stabilization*], Section F [*Materials Handling*]. DEMLR provides two sample plan sheets that permittees may add to their E&SC Plan set to fulfill Sections E(2) and F of this permit at https://deq.nc.gov/NCG01.

Recommendations for preparing the E&SC plan as well as for designing, constructing, and maintaining the erosion and sedimentation control practices are contained in the North Carolina Erosion and Sediment Control Planning and Design Manual.

## SECTION A: REQUIRED COMPONENTS OF THE STORMWATER POLLUTION PREVENTION PLAN

The E&SC Erosion and Sedimentation Control Plan shall include, at a minimum, the following components and **those components shall be in compliance with all conditions of this permit**. Hard and/or digital copies shall be submitted in accordance with the specifications of the E&SC plan authority.

1. **Location Information**
   _____ Project location & labeled vicinity map (roads, streets, landmarks)
   _____ North arrow and scale
   _____ Identification of the River Basin
   _____ A copy of site disturbed area located on applicable USGS quadrangle and hardbound copy of the NRCS Soils maps to scale
   _____ Latitude and longitude (in decimal degrees) at the project entrance

2. **Narrative and Construction Sequence**
   _____ Narrative describing the nature & purpose of the construction activity
   _____ Construction sequence related to erosion and sediment control (including installation of critical measures prior to the initiation of the land-disturbing activity & removal of measures after areas they serve are permanently stabilized. Address all phases of construction and necessary practices associated with temporary stream bypasses and/or crossings
   _____ Estimated start and end dates

3. **General Site Features**
   _____ Property lines
   _____ Existing and proposed contours (topographic lines)
   _____ Stockpiled topsoil or subsoil locations
   _____ Limits of disturbed area (with acreage labeled) within which all construction, material storage, grading, and related activities occur, including the following items as applicable:
   - Access to E&SC measures, lots that will be disturbed, and utilities that may extend offsite.
   - Temporary access and haul roads, other than public roads, constructed or used in connection with the land-disturbing activity

- Borrow and waste areas created by the applicant. If the land-disturbing activity and any related temporary building or waste activity are not conducted by the same person, they shall be considered separate land-disturbing activities
- Offsite borrow pits if the borrow pit is a construction support activity to the development
____ Planned and existing building locations and elevations, if applicable
____ Planned & existing road locations & elevations, including temporary access roads, if applicable
____ Profiles of streets, utilities, and permanent ditch lines, if applicable
____ Lot lines and/or building numbers, if applicable
____ Easements and drainageways, particularly required for offsite affected areas, if applicable
____ Location and details associated with any onsite stone crushing or other processing of material excavated, if applicable. A mining permit will be required if the affected area associated with excavation, processing, stockpiles and transport of such materials comprises one or more acres, and materials will be leaving the development tract

**4.    Site Drainage Features**
____ Existing and planned drainage patterns (include off-site areas that drain through project and address temporary and permanent conveyance of stormwater over graded slopes)
____ Drainage area map
____ Surface waters, including the limits of wetlands, streams, lakes and ponds and all required local or state buffer zones as well as impact maps by the construction activity to these sensitive areas.
____ Method used to determine acreage of land being disturbed and drainage areas to all proposed E&SC measures (e.g. delineation map)
____ Size, pipe material and location of culverts and sewers
____ Soil information throughout the site and below culvert storm outlets, including soil type and special characteristics
____ Name and classification of receiving water course where discharges are to occur

**5.  Plans Showing E&SC Measures**
____ Legend (provide appropriate symbols for all measures and reference them to the construction details)
____ Location of temporary and permanent E&SC measures
____ Location of permanent stormwater quality and quantity control measures
____ Construction drawings and details for temporary and permanent measures, including outlet structures. Show measures to scale on plan and include proposed contours where necessary. Ensure design storage requirements are maintained through all phases of construction.
____ Specifications for ground stabilization
____ Maintenance requirements for measures
____ Contact person responsible for maintenance, if the permittee wishes to designate one.  If not, the financially responsible organization will be the contact for maintenance.
____ A note stating that material handling procedures for the items required in Part II, Section F will be followed.
____ Standard details for structural BMPs to be installed to manage the anticipated materials listed in Part II, Section F such as construction debris management, concrete washout, paint washout, petroleum product storage and pesticide/herbicide handling, along with spill prevention practices.

**6.  Calculations**
____ Calculations for peak discharges of runoff from each outlet at pre-development, during construction and at completion.  Provide all supporting data for the computation methods used (rainfall data for required storm events, time of concentration/storm duration, and runoff coefficients).

____ Design calculations for culverts and storm sewers (include headwater, tailwater and outlet velocities)
____ Discharge and velocity calculations for open channel and ditch flows (easement & rights-of-way)
____ Design calculations for cross sections and method of stabilization for existing and planned channels (include temporary linings). Include appropriate permissible velocity and shear stress.
____ Design calculations and construction details for energy dissipaters below culvert and storm sewer outlets (include stone/material specs & apron dimensions). Avoid discharges on fill slopes.
_____ Design calculations and dimensions for sediment traps and basins
_____ Total and disturbed drainage areas for silt fencing and other sediment controls


**7. Vegetative Stabilization Shown on Plans**
____ Area & acreage to be stabilized with vegetation
____ Method of soil preparation
____ Seed type & rates (temporary & permanent)
____ Fertilizer type and rates
____ Mulch type and rates (include mulch anchoring methods**)**


**8. Documentation**
____ Completed, signed & notarized **Financial Responsibility/Ownership Form**
____ Certificate of assumed name, if the owner is a partnership
____ Name of Registered Agent (if applicable)
____ Copy of the most current Deed for the site. Please make sure the deed(s) and ownership information are consistent between the plan sheets, local records and this form.
____ Provide latitude & longitude (in decimal degrees) at the project entrance.
_____ Army Corps 404 permit and Water Quality 401 certification, if required for project, or a complete application if these items are not yet issued.
____ DWR Buffer Authorization, if required for project
_____ Copies of any recorded easements and/or agreements with adjoining property owners for landlocked parcels


## SECTION B: DESIGN AND CONSTRUCTION STANDARDS FOR EROSION AND SEDIMENT CONTROL MEASURES

**1. Objective of E&SC Measures**
E&SC Measures shall be designed and constructed to prevent off-site sedimentation damage.

**2. Area to Be Covered by the E&SC Plan**
The E&SC plan shall include the limits of disturbed area within which all construction, material storage, grading, and related activities occur, including the following items as applicable:

(a) Access to E&SC measures, lots that will be disturbed, and utilities that may extend offsite,

(b) Temporary access and haul roads, other than public roads, constructed or used in connection with the land-disturbing activity

(c) Borrow and waste areas created by the applicant. If the land-disturbing activity and any related borrow or waste activity are not conducted by the same person, they shall be considered separate land-disturbing activities

(d) Offsite borrow pits if the borrow pit is a construction support activity to the development

**3. Angle for Graded Slopes**

Page 6 of 26

The angle for graded slopes and fills shall be no greater than the angle that can be retained by vegetative cover or other erosion control devices or structures. (NCGS 113A-57(2))

4. **Upslope Areas**
   Runoff originating upslope of the disturbed areas shall be either diverted away from the construction activity or E&SC measures shall be sized sufficiently to handle the runoff. Any diversion measures shall be shown on the plans.

5. **Design Standard for E&SC Measures**
   Plans shall include measures necessary to prevent erosion at the limit of disturbance during the 10-year storm or the 25-year storm in HQW Zones and the Falls Lake Watershed.

6. **Calculation Method**
   Hydrologic calculations for designing E&SC measures shall be in accordance with the procedures in the United States Department of Agriculture, Natural Resources Conservation Service's "National Engineering Field Manual Handbook 630" which is herein incorporated by reference including subsequent amendments and editions, and may be accessed at: https://www.nrcs.usda.gov/wps/portal/nrcs/detailfull/national/water/manage/hydrology/?cid=stelprdb1043063 or according to procedures adopted by any other agency of this state or the United States or any generally recognized organization or association.

7. **Stormwater Conveyances**
   Any increase in stormwater runoff velocity resulting from a land-disturbing activity shall not result in accelerated erosion of the receiving stormwater conveyance during the 10-year storm or the 25-year storm in HQW Zones. The following additional requirements apply to stormwater conveyances:

   (a) The velocity in the receiving stormwater conveyance shall not exceed the maximum permissible velocity per Table 1 except for sinuous channels. For sinuous channels, multiply allowable velocity in Table 1 by 0.95 for slightly sinuous channels, by 0.9 for moderately sinuous channels, and by 0.8 for highly sinuous channels

   **Table 1: Maximum Permissible Velocities**

   | Stormwater conveyance in-situ material | Maximum Permissible Velocity | |
   |---|---|---|
   | | Feet per second | Meters per second |
   | Fine sand (noncolloidal) Sandy loam (noncolloidal) | 2.5 | 0.8 |
   | Silt loam (noncolloidal) | 3.0 | 0.9 |
   | Ordinary firm loam Alluvial silts (noncolloidal) | 3.5 | 1.1 |
   | Fine gravel Stiff clay (very colloidal) Alluvial silts (colloidal) | 5.0 | 1.5 |
   | Graded, silt to cobbles (colloidal) Cobbles and shingles | 5.5 | 1.7 |
   | Coarse gravel (noncolloidal) Shale and hard pans | 6.0 | 1.8 |

   (b) Conveyances may be stabilized by planting vegetation, enlarging cross sections, and/or providing erosion-resistant lining. Any erosion-resistant linings shall be shown on the plans.

8. **Sediment Basin Outlet Structures**
   Sediment basins and traps with drainage areas of one acre or greater shall use outlet structures that withdraw water from the surface.

9. **Lower Portions of the Site**
   Portions of a site that are lower in elevation than adjacent discharge locations and are not
   expected to discharge during construction may be exempt from the temporary ground cover
   requirements if identified on the approved E&SC plan or added by the E&SC plan authority.

## SECTION C: ADDITIONAL DESIGN AND CONSTRUCTION STANDARDS IN HIGH QUALITY WATER (HQW) ZONES

1. **Extent of the HQW Zone**
   HQW Zones are those areas in the 20 Coastal Counties that are within 575 feet of High Quality
   Waters and for the remainder of the state, areas that are within one mile of and drain to HQWs.

2. **Disturbed Area Limits in HQW Zones**
   Disturbed areas in HQW zones shall be limited at any time to a maximum total area within the
   boundaries of the tract of 20 acres. Only the portion of the construction activity within a HQW zone
   shall be subject to the 20-acre limit. Larger disturbed areas may be allowed with the written
   approval of the Director upon providing adequate engineering justification with a specific
   construction sequence that addresses phasing, limited exposure, weekly submitted self-inspection
   reports and/or more conservative design than the 25-year storm. The Director may also include
   other conditions as necessary based on specific site conditions.

3. **Additional Sediment Basin Requirements in HQW Zones**
   Sediment basins that discharge to HQW Zones shall be designed and constructed to meet the
   following criteria unless the permittee demonstrates to the E&SC plan authority that meeting each
   of the basin design conditions below would result in design or operational hardships. Alternative
   control measures, such as quicker application of ground cover or use of sediment flocculants, shall
   be allowed as a substitute on a case-by-case basis if it can be shown that use of the alternate
   practices is expected to result in an equal or better sediment discharge reduction from the site.

   (a) Use a surface withdrawal mechanism except when the basin drainage area is less than 1.0 acre.

   (b) Have a minimum of 1800 cubic feet per of storage area per acre of disturbed area.

   (c) Have a minimum surface area of 325 square feet per cfs for the peak flow from the 25-year
       storm.

   (d) Have a minimum dewatering time of 48 hours.

   (e) Incorporate three baffles unless the basin is less than 20 feet in length, in which case two baffles
       are sufficient.

4. **Open Channels in HQW Zones**
   Newly constructed open channels in HQW zones shall be designed and constructed with side slopes
   no steeper than two horizontal to one vertical if a vegetative cover is used for stabilization unless soil
   conditions permit a steeper slope or where the slopes are stabilized by using mechanical devices,
   structural devices or other acceptable ditch liners.  The angle for side slopes shall be sufficient to
   restrain accelerated erosion.

## SECTION D: CONSTRUCTION ACTIVITY BUFFERS

The requirements in Section D below shall not apply to a land-disturbing activity in connection with the construction of facilities to be located on, over, or under a lake or natural watercourse (NCGS 113A-57).

1. **Buffers in Non-Trout Waters**
   Unless wider buffers are required per NC rules or statutes, the width of the buffer shall be sufficient to confine visible sedimentation to the 25 percent of the strip closest to the land-disturbing activity. The width of a buffer adjacent to a non-trout water shall be measured from the edge of the water to the nearest edge of the disturbed area.

   Recommended buffer widths to achieve this standard are shown in Table 2 below.

### Table 2: Recommended Buffer Widths

| Slope of Buffer (%) | Recommended Width of Undisturbed Vegetation Adjacent to Non-Trout Waters |
|---|---|
| 0-1 | 15 feet |
| 1-3 | 20 feet |
| 3-5 | 25 feet |
| >5 | 25 feet + (% of slope – 5) |

2. **Buffers in Trout Waters**
   Unless wider buffers are required per NC rules or statutes, the minimum width for an undisturbed buffer adjacent to trout waters shall be 25 feet. The width of a buffer adjacent to a trout water shall be measured horizontally from the top of bank to the nearest edge of the land-disturbing activity. However, the Sedimentation Control Commission may approve plans that include land-disturbing activity along trout waters when the duration of said disturbance would be temporary and the extent of said disturbance would be minimal. (NCGS 113A-57(1)).

## SECTION E: GROUND STABILIZATION

1. **Ground Stabilization Timelines**
   Ground stabilization shall be achieved on any area of a site where land disturbing activities have ceased within the timeframes listed in Table 3 below. It is recommended to stabilize the ground more quickly if practicable. Extensions of time may be approved by the E&SC plan authority based on weather or other site-specific conditions that make compliance impracticable. Portions of a site that are lower in elevation and not expected to discharge during construction may be exempt from the temporary ground cover requirements if identified on the E&SC plan and approved by the E&SC plan authority.

**Table 3: Required Ground Stabilization Timeframes**

| Site Area Description | Stabilize within this many calendar days after ceasing land disturbance | Timeframe Variations |
|---|---|---|
| (a) Perimeter dikes, swales, ditches, and perimeter slopes | 7 | None |
| (b) High Quality Water (HQW) Zones | 7 | None |
| (c) Slopes steeper than 3:1 | 7 | • If slopes are 10' or less in length and are not steeper than 2:1, 14 days are allowed |
| (d) Slopes 3:1 to 4:1 | 14 | • 7 days for slopes greater than 50' in length and with slopes steeper than 4:1<br>• 7 days for perimeter slopes, swales, ditches, perimeter slopes, and HQW Zones<br>• 10 days for the Falls Lake Watershed |
| (e) Areas with slopes flatter than 4:1 | 14 | • 7 days for perimeter dikes, swales, ditches, perimeter slopes, and HQW Zones<br>• 10 days for the Falls Lake Watershed unless there is zero slope. |

2. **Permanent Ground Stabilization Timeline**
   After the permanent cessation of construction activities, any areas with temporary ground stabilization shall be converted to permanent ground stabilization as soon as practicable but in no case longer than 90 calendar days after the last land disturbing activity. Temporary ground stabilization shall be maintained in a manner to render the surface stable against accelerated erosion until permanent ground stabilization is achieved.

## SECTION F: MATERIALS HANDLING

Any structural controls installed to manage construction materials stored or used on site shall be included in the field copy of the E&SC plan. Requirements for handling materials on construction sites shall be as follows:

1. **Polyacrylamides (PAMS) and Flocculants**
   Polyacrylamides (PAMS) and flocculants shall be:

   (a) stored in leak-proof containers that are kept under storm-resistant cover or surrounded by secondary containment structures designed to protect adjacent surface waters,

   (b) selected from the *NC DWR List of Approved PAMS/Flocculants* list, available at:
   https://files.nc.gov/ncdeq/Water%20Quality/Environmental%20Sciences/ATU/ApprovedPAM S4_1_2017.pdf, and

(c) used at the concentrations specified in the *NC DWR List of Approved PAMS/Flocculants* and in accordance with the manufacturer's instructions.

2. **Equipment Fluids**

   (a) ***Fuels, lubricants, coolants, and hydraulic fluids, and other petroleum products*** shall be handled and disposed of in a manner so as not to enter surface or ground waters and in accordance with applicable state and federal regulations. Equipment used on the site must be operated and maintained properly to prevent discharge of fluids.

   (b) ***Equipment, vehicle, and other wash waters*** shall not be treated in a sediment basin or sediment trap. Alternative controls should be provided such that there is no discharge of soaps, solvents, or detergents.

3. **Waste Materials**

   (a) ***Building material and land clearing waste*** shall be disposed of in accordance with North Carolina General Statutes, Chapter 130A, Article 9 - Solid Waste Management, and rules governing the disposal of solid waste (15A NCAC 13B). Areas dedicated for managing building material and land clearing waste shall be at least 50 feet away from storm drain inlets and surface waters unless it can be shown that no other alternatives are reasonably available.

   (b) ***Paint and other liquid building material waste*** shall not be dumped into storm drains. It is recommended to locate paint washouts at least 50 away from storm drain inlets unless there is no alternative. Other options are to install lined washouts to use portable, removable bags or bins.

   (c) ***Hazardous or toxic waste*** shall be managed in accordance with the federal Resource Conservation and Recovery Act (RCRA) and NC Hazardous Waste Rules at 15A NCAC, Subchapter 13A.

   (d) ***Litter and sanitary waste*** shall be managed in a manner to prevent it from entering waters and shall be disposed of offsite.

4. **Herbicide, Pesticide, and Rodenticides**
   Herbicide, pesticide, and rodenticides shall be stored and applied in accordance with the Federal Insecticide, Fungicide, and Rodenticide Act and label restrictions.

5. **Concrete Materials**
   Concrete materials onsite, including excess concrete, shall be controlled and managed to avoid contact with surface waters, wetlands or buffers. No concrete or cement slurry shall be discharged from the site. (Note that discharges from onsite concrete plants require coverage under a separate NPDES permit – NCG140000.) Any hardened concrete residue will be disposed of, or recycled on site, in accordance with local and state solid waste regulations.

6. **Earthen Material Stock Piles**
   Earthen material stock piles shall be located at least 50 feet away from storm drain inlets and surface waters unless no other alternatives are reasonably available.

## SECTION G: OPERATION AND MAINTENANCE

1. **Modifications to the E&SC Plan**
   Modifications to the approved E&SC plan that require changes to the E&SC measure designs, the drainage areas, or the disturbed areas draining to E&SC measures shall be approved by the E&SC plan authority. Deviations from the approved E&SC plan, or approved revised E&SC plan, shall constitute a violation of this permit unless the deviation is to correct an emergency situation where sediment is being discharged off the site. The E&SC plan authority may allow deviations from the E&SC plan on a case-by-case basis if the deviations are minor adjustments to

address minor deficiencies. A minor adjustment shall be the addition of E&SC measures (e.g., silt fence, inlet protection, check dams, rolled erosion control practices, etc.), or the relocation of E&SC measures that would improve the overall stormwater management and sediment control onsite. Minor adjustments shall be noted on the approved E&SC plan and maintained at the job site.

2. **Operation and Maintenance**
   The permittee shall install and maintain all temporary and permanent E&SC measures as required by this permit and the approved E&SC plan.

3. **Corrective Actions**
   If self-inspections required by this permit identify a need for maintenance of control measures, modifications or additions to control measures, or corrective actions to control sediment or other pollutants, these actions shall be performed as soon as possible considering adverse weather and site conditions.

4. **Draw Down of Sediment Basins for Maintenance or Close Out**
   Sediment basins and traps that receive runoff from drainage areas of one acre or more shall use outlet structures that withdraw water from the surface when these devices need to be drawn down for maintenance or close out unless this is infeasible. The circumstances in which it is not feasible to withdraw water from the surface shall be rare (for example, times with extended cold weather). Non-surface withdrawals from sediment basins shall be allowed only when all of the following criteria have been met:

   (a) The E&SC Plan authority has been provided with documentation of the non-surface withdrawal and the specific time periods or conditions in which it will occur. The non-surface withdrawal shall not commence until the E&SC plan authority has approved these items,

   (b) The non-surface withdrawal has been reported as an anticipated bypass in accordance with Part III, Section C, Item (2)(c) and (d) of this permit,

   (c) Dewatering discharges are treated with controls to minimize discharges of pollutants from stormwater that is removed from the sediment basin. Examples of appropriate controls include properly sited, designed and maintained dewatering tanks, weir tanks, and filtration systems,

   (d) Vegetated, upland areas of the sites or a properly designed stone pad is used to the extent feasible at the outlet of the dewatering treatment devices described in Item(c) above,

   (e) Velocity dissipation devices such as check dams, sediment traps, and riprap are provided at the discharge points of all dewatering devices, and

   (f) Sediment removed from dewatering treatment devices described in Item(c) above is disposed of in a manner that does not cause deposition of sediment into waters of the United States.

5. **Bypass of E&SC Measures**
   Diversions of stormwater from E&SC measures *when the design storm has not been exceeded* are not allowed. Bypasses of E&SC measures shall be reported in accordance with Part III, Section C, Item (2)(c) and (d) of this permit.

6. **Unavoidable Bypass for Public Safety**
   A bypass may be allowed by the Director if the Director determines that all of the following conditions were met:

   (a) The bypass is unavoidable to prevent loss of life, personal injury or severe property damage,

   (b) There were no feasible alternatives to the bypass, such as the use of auxiliary control facilities, retention of stormwater or maintenance during normal periods of equipment downtime or dry weather. This condition is not satisfied if adequate backup controls should have been installed in the exercise of reasonable engineering judgement to prevent a bypass

which occurred during normal periods of equipment downtime or preventative maintenance, and

(c) the permittee submitted a notice of the bypass per the record-keeping requirements in Part III, Section C, Item (2)(c) and (d) of this permit.

**7. Upset of E&SC Measures**

Diversions of stormwater from E&SC measures may be considered as an upset if the permittee can demonstrate that all of the following conditions have been met. In any enforcement proceeding, the permittee seeking to establish the occurrence of an upset has the burden of proof.

(a) The permittee submitted notice of the upset as required in this general permit and identifies the cause(s) of the upset.

(b) The permittee demonstrates that the upset was not caused by operational error, improperly designed treatment or control facilities, lack of preventive maintenance, or careless or improper operation.

(c) The permittee agrees to take remedial measures if necessary.

# PART III
# SELF-INSPECTION, RECORDKEEPING AND REPORTING

## SECTION A: SELF-INSPECTIONS

Self-inspections are required during normal business hours in accordance with the table below. When adverse weather or site conditions would cause the safety of the inspection personnel to be in jeopardy, the inspection may be delayed until the next business day on which it is safe to perform the inspection. In addition, when a storm event of equal to or greater than 1.0 inch occurs outside of normal business hours, the self-inspection shall be performed upon the commencement of the next business day. Any time when inspections were delayed shall be noted in the Inspection Record.

**Table 4: Self-Inspection Requirements**

| Inspect | Frequency (during normal business hours) | Inspection records must include: |
|---|---|---|
| (1) Rain gauge maintained in good working order | Daily | Daily rainfall amounts. If no daily rain gauge observations are made during weekend or holiday periods, and no individual-day rainfall information is available, record the cumulative rain measurement for those un-attended days (and this will determine if a site inspection is needed). Days on which no rainfall occurred shall be recorded as "zero." The permittee may use another rain-monitoring device approved by the Division. |
| (2) E&SC Measures | At least once per 7 calendar days and within 24 hours of a rain event ≥ 1.0 inch in 24 hours | 1. Identification of the measures inspected, 2. Date and time of the inspection, 3. Name of the person performing the inspection, 4. Indication of whether the measures were operating properly, 5. Description of maintenance needs for the measure, 6. Description, evidence, and date of corrective actions taken. |
| (3) Stormwater discharge outfalls (SDOs) | At least once per 7 calendar days and within 24 hours of a rain event ≥ 1.0 inch in 24 hours | 1. Identification of the discharge outfalls inspected, 2. Date and time of the inspection, 3. Name of the person performing the inspection, 4. Evidence of indicators of stormwater pollution such as oil sheen, floating or suspended solids or discoloration, 5. Indication of visible sediment leaving the site, 6. Description, evidence, and date of corrective actions taken. |
| (4) Perimeter of site | At least once per 7 calendar days and within 24 hours of a rain event ≥ 1.0 inch in 24 hours | If visible sedimentation is found outside site limits, then a record of the following shall be made: 1. Actions taken to clean up or stabilize the sediment that has left the site limits, 2. Description, evidence, and date of corrective actions taken, and 3. An explanation as to the actions taken to control future releases. |
| (5) Streams or wetlands onsite or offsite (where accessible) | At least once per 7 calendar days and within 24 hours of a rain event ≥ 1.0 inch in 24 hours | If the stream or wetland has increased visible sedimentation or a stream has visible increased turbidity from the construction activity, then a record of the following shall be made: 1. Description, evidence and date of corrective actions taken, and 2. Records of the required reports to the appropriate Division Regional Office per Part III, Section C, Item (2)(a) of this permit of this permit. |

| (6) Ground stabilization measures | After each phase of grading | 1. The phase of grading (installation of perimeter E&SC measures, clearing and grubbing, installation of storm drainage facilities, completion of all land-disturbing activity, construction or redevelopment, permanent ground cover). <br> 2. Documentation that the required ground stabilization measures have been provided within the required timeframe or an assurance that they will be provided as soon as possible. |

NOTE:  The rain inspection resets the required 7 calendar day inspection requirement.


## SECTION B:  RECORDKEEPING

### 1.  E&SC Plan Documentation
The approved E&SC plan as well as any approved deviation shall be kept on the site.  The approved E&SC plan must be kept up-to-date throughout the coverage under this permit.  The items listed in Table 5 pertaining to the E&SC plan shall be kept on site and available for inspection at all times during normal business hours.

**Table 5:  Recordkeeping Requirements**

| Item to Document | Documentation Requirements |
|---|---|
| (a)  Each E&SC measure has been installed and does not significantly deviate from the locations, dimensions and relative elevations shown on the approved E&SC plan. | Initial and date each E&SC measure on a copy of the approved E&SC plan or complete, date and sign an inspection report that lists each E&SC measure shown on the approved E&SC plan.  This documentation is required upon the initial installation of the E&SC measures or if the E&SC measures are modified after initial installation. |
| (b)  A phase of grading has been completed. | Initial and date a copy of the approved E&SC plan or complete, date and sign an inspection report to indicate completion of the construction phase. |
| (c)  Ground cover is located and installed in accordance with the approved E&SC Plan. | Initial and date a copy of the approved E&SC plan or complete, date and sign an inspection report to indicate compliance with approved ground cover specifications. |
| (d)   The maintenance and repair requirements for all E&SC measures have been performed. | Complete, date and sign an inspection report. |
| (e)  Corrective actions have been taken to E&SC measures. | Initial and date a copy of the approved E&SC plan or complete, date and sign an inspection report to indicate the completion of the corrective action. |

### 2.  Additional Documentation to be Kept on Site
In addition to the E&SC plan documents above, the following items shall be kept on the site and available for inspections at all times during normal business hours, unless the Division provides a site-specific exemption based on unique site conditions that make this requirement not practical:

(a)   This General Permit as well as the Certificate of Coverage, after it is received.

(b)   Records of inspections made during the previous twelve months.  The permittee shall record the required observations on the Inspection Record Form provided by the Division or a similar inspection form that includes all the required elements. Use of electronically-available records

in lieu of the required paper copies will be allowed if shown to provide equal access and utility as the hard-copy records

3. **Documentation to be Retained for Three Years**
   All data used to complete the e-NOI and all inspection records shall be maintained for a period of three years after project completion and made available upon request. [40 CFR 122.41]

## SECTION C:   REPORTING

1. **Occurrences that Must be Reported**
   Permittees shall report the following occurrences:

   (a)   Visible sediment deposition in a stream or wetland.

   (b)   Oil spills if:
   - They are 25 gallons or more,
   - They are less than 25 gallons but cannot be cleaned up within 24 hours,
   - They cause sheen on surface waters (regardless of volume), or
   - They are within 100 feet of surface waters (regardless of volume).

   (c)   Releases of hazardous substances in excess of reportable quantities under Section 311 of the Clean Water Act Ref: 40 CFR 110.3and 40 CFR 117.3) or section 102 of CERCLA (Ref: 40 CFR 302.4) or G.S. 143-215.85.

   (d)   Anticipated bypasses and unanticipated bypasses.

   (e)   Noncompliance with the conditions of this permit that may endanger health or the environment.

2. **Reporting Timeframes and Other Requirements**
   After a permittee becomes aware of an occurrence that must be reported, he shall contact the appropriate Division regional office within the timeframes and in accordance with the other requirements listed in Table 6 below.  Occurrences outside normal business hours may also be reported to the Department's Environmental Emergency Center personnel at (800) 858-0368.

### Table 6:  Reporting Requirements

| Occurrence | Reporting Timeframes (After Discovery) and Other Requirements |
|---|---|
| (a) Visible sediment deposition in a stream or wetland | • ***Within 24 hours***, an oral or electronic notification.<br>• ***Within 7 calendar days***, a report that contains a description of the sediment and actions taken to address the cause of the deposition. Division staff may waive the requirement for a written report on a case-by-case basis.<br>• If the stream is named on the NC 303(d) list as impaired for sediment-related causes, the permittee may be required to perform additional monitoring, inspections or apply more stringent practices if staff determine that additional requirements are needed to assure compliance with the federal or state impaired-waters conditions. |
| (b) Oil spills and release of hazardous substances per Item 1(b)-(c) above | • ***Within 24 hours***, an oral or electronic notification.  The notification shall include information about the date, time, nature, volume and location of the spill or release. |
| (c) Anticipated bypasses [40 CFR 122.41(m)(3)] | • ***A report at least ten days before the date of the bypass, if possible***.  The report shall include an evaluation of the anticipated quality and effect of the bypass. |

| (d) Unanticipated bypasses [40 CFR 122.41(m)(3)] | • **Within 24 hours**, an oral or electronic notification. <br> • **Within 7 calendar days,** a report that includes an evaluation of the quality and effect of the bypass. |
|---|---|
| (e) Noncompliance with the conditions of this permit that may endanger health or the environment[40 CFR 122.41(l)(7)] | • **Within 24 hours**, an oral or electronic notification. <br> • **Within 7 calendar days**, a report that contains a description of the noncompliance, and its causes; the period of noncompliance, including exact dates and times, and if the noncompliance has not been corrected, the anticipated time noncompliance is expected to continue; and steps taken or planned to reduce, eliminate, and prevent reoccurrence of the noncompliance. [40 CFR 122.41(l)(6). <br> • Division staff may waive the requirement for a written report on a case-by-case basis. |

# PART IV    STANDARD CONDITIONS FOR NPDES STORMWATER GENERAL PERMITS

## SECTION A:  COMPLIANCE AND LIABILITY

1.  **Continuation of Previously Permitted Projects**
    Projects and their corresponding activities permitted under the previous version of the NC general permit for construction activities will automatically be considered covered under this general permit without the submittal of a Notice of Intent form.  In addition, an annual general permit fee shall not be required for projects covered under the previous version of the NC general permit for construction activities.

2.  **Projects Submitted Prior to this Permit's Effective Date**
    Complete project applications that were received prior to the effective date of this permit, but not approved by the E&SC plan authority until after approval of this NPDES permit, can rely on design and management practices effective at the time of application submittal.

3.  **Duty to Comply**
    The permittee must comply with all conditions of this general permit.  Any permit noncompliance constitutes a violation of the Clean Water Act (CWA) and is grounds for enforcement action; for permit termination, revocation and reissuance, or modification; or denial of a permit upon renewal application. [40 CFR 122.41]

    (a)  The permittee shall comply with standards or prohibitions established under section 307(a) of the CWA for toxic pollutants within the time provided in the regulations that establish these standards or prohibitions, even if the general permit has not yet been modified to incorporate the requirement. [40 CFR 122.41]

    (b)  The CWA provides that any person who violates section[s] 301, 302, 306, 307, 308, 318 or 405 of the Act, or any permit condition or limitation implementing any such sections in a permit issued under section 402, or any requirement imposed in a pretreatment program approved under sections 402(a)(3) or 402(b)(8) of the Act, is subject to a civil penalty not to exceed $37,500 per day for each violation. [33 USC 1319(d) and 40 CFR 122.41(a)(2)]

    (c)  The CWA provides that any person who negligently violates sections 301, 302, 306, 307, 308, 318, or 405 of the Act, or any condition or limitation implementing any of such sections in a permit issued under section 402 of the Act, or any requirement imposed in a pretreatment program approved under section 402(a)(3) or 402(b)(8) of the Act, is subject to criminal penalties of $2,500 to $25,000 per day of violation, or imprisonment of not more than 1 year, or both. In the case of a second or subsequent conviction for a negligent violation, a person shall be subject to criminal penalties of not more than $50,000 per day of violation, or by imprisonment of not more than 2 years, or both. [33 USC 1319(c)(1) and 40 CFR 122.41(a)(2)]

    (d)  Any person who *knowingly* violates such sections, or such conditions or limitations is subject to criminal penalties of $5,000 to $50,000 per day of violation, or imprisonment for not more than 3 years, or both. In the case of a second or subsequent conviction for a knowing violation, a person shall be subject to criminal penalties of not more than $100,000 per day of violation, or imprisonment of not more than 6 years, or both. [33 USC 1319(c)(2) and 40 CFR 122.41(a)(2)]

    (e)  Any person who *knowingly* violates section 301, 302, 303, 306, 307, 308, 318 or 405 of the Act, or any permit condition or limitation implementing any of such sections in a permit issued under section 402 of the Act, and who knows at that time that he thereby places another person in imminent danger of death or serious bodily injury, shall, upon conviction, be subject to a fine of not more than $250,000 or imprisonment of not more than 15 years, or both. In the

case of a second or subsequent conviction for a knowing endangerment violation, a person shall be subject to a fine of not more than $500,000 or by imprisonment of not more than 30 years, or both. An organization, as defined in section 309(c)(3)(B)(iii) of the CWA, shall, upon conviction of violating the imminent danger provision, be subject to a fine of not more than $1,000,000 and can be fined up to $2,000,000 for second or subsequent convictions. [40 CFR 122.41(a)(2)]

(f)    Under state law, a civil penalty of not more than $25,000 per violation may be assessed against any person who violates or fails to act in accordance with the terms, conditions, or requirements of a permit. [North Carolina General Statutes § 143-215.6A]

(g)    Any person may be assessed an administrative penalty by the Administrator for violating section 301, 302, 306, 307, 308, 318 or 405 of this Act, or any permit condition or limitation implementing any of such sections in a permit issued under section 402 of this Act. Administrative penalties for Class I violations are not to exceed $20,628 per violation, with the maximum amount of any Class I penalty assessed not to exceed $51,570. Penalties for Class II violations are not to exceed $20,628 per day for each day during which the violation continues, with the maximum amount of any Class II penalty not to exceed $257,848. [33 USC 1319(g)(2) and 40 CFR 122.41(a)(3)]

### 4.   Non-Stormwater Discharges
If a storm event monitored in accordance with this general permit coincides with a non-stormwater discharge, the permittee shall separately monitor all parameters as required under all other applicable discharge permits and provide this information with the stormwater discharge monitoring report.

### 5.   Test Procedures
Test procedures for the analysis of pollutants shall conform to the EMC regulations published pursuant to NCGS l43-2l5.63 et. seq, the Water and Air Quality Reporting Acts, and to regulations published pursuant to Section 304(g), 33 USC 1314, of the Federal Water Pollution Control Act, as Amended, and Regulation 40 CFR 136.

To meet the intent of the monitoring required by this general permit, all test procedures must produce minimum detection and reporting levels and all data generated must be reported down to the minimum detection or lower reporting level of the procedure.  If no approved methods are determined capable of achieving minimum detection and reporting levels below general permit discharge requirements, then the most sensitive (method with the lowest possible detection and reporting level) approved method must be used.

### 6.   Duty to Mitigate
The permittee shall take all reasonable steps to minimize or prevent any discharge in violation of this general permit which has a reasonable likelihood of adversely affecting human health or the environment. [40 CFR 122.41(d)]

### 7.   Need to Halt or Reduce Not a Defense
It shall not be a defense for a permittee in an enforcement action that it would have been necessary to halt or reduce the permitted activity in order to maintain compliance with the condition of this general permit. [40 CFR 122.41(c)]

### 8.   Civil and Criminal Liability
Except as provided in Part II, Section B of this general permit regarding bypassing of stormwater control facilities, nothing in this permit shall be construed to relieve the permittee from any responsibilities, liabilities, or penalties for noncompliance pursuant to NCGS l43-2l5.3, l43-2l5.6A, 143-215.6B, 143-215.6C, or Section 309 of the Federal Act, 33 USC 1319.  Furthermore, the

permittee is responsible for consequential damages, such as fish kills, even though the responsibility for effective compliance may be temporarily suspended.

9. **Oil and Hazardous Substance Liability**
Nothing in this general permit shall be construed to preclude the institution of any legal action or relieve the permittee from any responsibilities, liabilities, or penalties to which the permittee is or may be subject to under NCGS l43-2l5.75 et seq. or Section 311 of the Federal Act, 33 USC 1321.

10. **Property Rights**
The issuance of this general permit does not convey any property rights in either real or personal property, or any exclusive privileges, nor does it authorize any injury to private property or any invasion of personal rights, nor any infringement of Federal, State or local laws or regulations [40 CFR 122.41(g)].

11. **Severability**
The provisions of this general permit are severable, and if any provision of this general permit, or the application of any provision of this general permit to any circumstances, is held invalid, the application of such provision to other circumstances, and the remainder of this general permit, shall not be affected thereby [NCGS 150B-23].

12. **Duty to Provide Information**
The permittee shall furnish to the Division, within a reasonable time, any information which the Division may request to determine whether cause exists for modifying, revoking and reissuing, or terminating the general permit issued pursuant to this general permit or to determine compliance with this general permit. The permittee shall also furnish to the Division upon request, copies of records required to be kept by this general permit [40 CFR 122.41(h)].

13. **Inspection and Entry**
The permittee shall allow the Director, an authorized representative (including an authorized contractor acting as a representative of the Director), or an authorized representative of a municipal operator or the separate storm sewer system receiving the discharge (if applicable), upon the presentation of credentials and other documents as may be required by law, to:

(a) Enter upon the permittee's premises where a regulated facility or activity is located or conducted, or where records must be kept under the conditions of this general permit;

(b) Have access to and copy, at reasonable times, any records that must be kept under the conditions of this general permit;

(c) Inspect at reasonable times any facilities, equipment (including monitoring and control equipment), practices, or operations regulated or required under this general permit; and

(d) Sample or monitor at reasonable times, for the purposes of assuring permit compliance or as otherwise authorized by the Clean Water Act, any substances or parameters at any location. [40 CFR 122.41(i)]

14. **Penalties for Tampering**
The Clean Water Act provides that any person who falsifies, tampers with, or knowingly renders inaccurate, any monitoring device or method required to be maintained under this general permit shall, upon conviction, be punished by a fine of not more than $l0,000 per violation, or by imprisonment for not more than two years per violation, or by both. If a conviction of a person is for a violation committed after a first conviction of such person under this paragraph, punishment is a fine of not more than $20,000 per day of violation, or by imprisonment of not more than 4 years, or both [40 CFR 122.41].

**15. Penalties for Falsification of Reports**

The Clean Water Act provides that any person who knowingly makes any false statement, representation, or certification in any record or other document submitted or required to be maintained under this general permit, including monitoring reports or reports of compliance or noncompliance shall, upon conviction, be punished by a fine of not more than $10,000 per violation, or by imprisonment for not more than two years per violation, or by both [40 CFR 122.41].

**16. Onshore or Offshore Construction**

This general permit does not authorize or approve the construction of any onshore or offshore physical structures or facilities or the undertaking of any work in any navigable waters.

**17. Duty to Reapply**

Dischargers covered by this general permit need not submit a new Notice of Intent (NOI) or renewal request unless so directed by the Division. If the Division chooses not to renew this general permit, the permittee will be notified to submit an application for an individual permit. [15A NCAC 02H .0127(e)]

**18. Planned Changes**

The permittee shall give notice to the Director as soon as possible of any planned changes at the permitted facility which could significantly alter the nature or quantity of pollutants discharged [40 CFR 122.41(l)]. This notification requirement includes pollutants which are not specifically listed in the general permit or subject to notification requirements under 40 CFR Part 122.42 (a).

**19. Anticipated Noncompliance**

The permittee shall give advanced notice to the Director of any planned changes at the permitted facility which may result in noncompliance with the general permit. [40 CFR 122.41(l)(2)]

## SECTION B: PERMIT ADMINISTRATION

**1. General Permit Expiration**

General permits will be effective for a term not to exceed five years, at the end of which the Division may renew them after all public notice requirements have been satisfied. If a general permit is renewed, existing permittees do not need to submit a renewal request or pay a renewal fee unless directed by the Division. New applicants seeking coverage under a renewed general permit must submit a Notice of Intent to be covered and obtain a Certificate of Coverage under the renewed general permit. [15A NCAC 02H .0127(e)]

**2. Transfers**

This general permit is not transferable to any person without prior written notice to and approval from the Director in accordance with 40 CFR 122.61. The Director may condition approval in accordance with NCGS 143-215.1, in particular NCGS 143-215.1(b)(4) b.2., and may require modification or revocation and reissuance of the Certificate of Coverage, or a minor modification, to identify the new permittee and incorporate such other requirements as may be necessary under the CWA [40 CFR 122.41(l)(3), 122.61] or state statute. **The Permittee is required to notify the Division in writing in the event the permitted facility is sold or closed.**

**3. When an Individual Permit May be Required**

The Director may require any owner/operator authorized to discharge under a certificate of coverage issued pursuant to this general permit to apply for and obtain an individual permit or an alternative general permit. Any interested person may petition the Director to take action under this paragraph. [15A NCAC 02H .0127(i)-(j)] Cases where an individual permit may be required include, but are not limited to, the following:

(a) The discharger is a significant contributor of pollutants;

(b) The receiving stream is of a unique quality and the standard conditions may not provide adequate protection;

(c) Conditions at the permitted site change, altering the constituents and/or characteristics of the discharge such that the discharge no longer qualifies for a general permit;

(d) The discharge violates the terms or conditions of this general permit;

(e) A change has occurred in the availability of demonstrated technology or practices for the control or abatement of pollutants applicable to the point source;

(f) Effluent limitations are promulgated for the point sources covered by this general permit;

(g) A water quality management plan containing requirements applicable to such point sources is approved after the issuance of this general permit;

(h) The Director determines at his or her own discretion that an individual permit is required.

4. **When an Individual Permit May be Requested**
Any permittee operating under this general permit may request to be excluded from the coverage of this general permit by applying for an individual permit. When an individual permit is issued to an owner/operator the applicability of this general permit is automatically terminated on the effective date of the individual permit. [15A NCAC 02H .0127(h)]

5. **Impacts or Potential Impacts to Surface Waters or Wetlands**
If evidence indicates that the stormwater discharges from the site are impacting or have the potential to impact surface waters or wetlands, then the Division may take appropriate actions including any or all of the following:
a) take compliance and enforcement action;
b) require the permittee to include and implement appropriate control and restoration measures;
c) require the permittee to develop and implement additional site-specific stormwater pollution prevention measures;
d) require the permittee to obtain an individual permit.

6. **Signatory Requirements**
All applications, reports, or information submitted to the Permitting Issuing Authority shall be signed and certified. [40 CFR 122.41(k)]
(a) All Notices of Intent to be covered under this general permit shall be signed as follows:

- ***For a corporation***: by a responsible corporate officer. For the purpose of this Section, a responsible corporate officer means: (a) a president, secretary, treasurer or vice president of the corporation in charge of a principal business function, or any other person who performs similar policy or decision making functions for the corporation, or (b) the manager of one or more manufacturing, production, or operating facilities, provided, the manager is authorized to make management decisions which govern the operation of the regulated facility including having the explicit or implicit duty of making major capital investment recommendations, and initiating and directing other comprehensive measures to assure long term environmental compliance with environmental laws and regulations; the manager can ensure that the necessary systems are established or actions taken to gather complete and accurate information for permit application requirements; and where authority to sign documents has been assigned or delegated to the manager in accordance with corporate procedures.

- ***For a partnership or sole proprietorship***: by a general partner or the proprietor, respectively; or

- ***For a municipality, State, Federal, or other public agency***:  by either a principal executive officer or ranking elected official. [40 CFR 122.22]

(b) All reports required by the general permit and other information requested by the Director shall be signed by a person described in paragraph a. above or by a duly authorized representative of that person. A person is a duly authorized representative only if:

- The authorization is made in writing by a person described above;

- The authorization specified either an individual or a position having responsibility for the overall operation of the regulated facility or activity, such as the position of plant manager, operator of a well or well field, superintendent, a position of equivalent responsibility, or an individual or position having overall responsibility for environmental matters for the company. (A duly authorized representative may thus be either a named individual or any individual occupying a named position.); and

- The written authorization is submitted to the Director. [40 CFR 122.22]

(c) If an authorization under paragraph (b) of this section is no longer accurate because a different individual or position has responsibility for the overall operation of the facility, a new authorization satisfying the requirements of paragraph (b) of this section must be submitted to the Director prior to or together with any reports, information, or applications to be signed by an authorized representative. [40 CFR 122.22]

(d) Any person signing a document under paragraphs a. or b. of this section shall make the following certification [40 CFR 122.22]. NO OTHER STATEMENTS OF CERTIFICATION WILL BE ACCEPTED:

> *"I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."*

**7. General Permit Modification, Revocation and Reissuance, or Termination**
The issuance of this general permit does not prohibit the Division from reopening and modifying the general permit, revoking and reissuing the general permit, or terminating the general permit as allowed by the laws, rules, and regulations contained in Title 40, Code of Federal Regulations, Parts 122 and 123; Title 15A of the North Carolina Administrative Code, Subchapter 2H .0100; and North Carolina General Statute 143-215.1 et al.

After public notice and opportunity for a hearing, the general permit may be terminated for cause. The filing of a request for a general permit modification, revocation and reissuance, or termination does not stay any general permit condition.  The **Certificate of Coverage** shall expire when the general permit is terminated.

**8. Certificate of Coverage Actions**
The general permit may be modified, revoked and reissued, or terminated for cause.  The notification of planned changes or anticipated noncompliance does not stay any general permit condition [40 CFR 122.41(f)].

9. **Annual Administering and Compliance Monitoring Fee Requirements**
The permittee must pay the administering and compliance monitoring fee within 30 (thirty) days after being billed by the Division. Failure to pay the fee in timely manner in accordance with 15A NCAC 2H .0105(b)(2) may cause this Division to initiate action to revoke coverage under the general permit.

10. **Availability of Reports**
Except for data determined to be confidential under NCGS 143-215.3(a)(2) or Section 308 of the Federal Act, 33 USC 1318, all reports prepared in accordance with the terms shall be available for public inspection at the offices of the Division. As required by the Act, analytical data shall not be considered confidential. Knowingly making any false statement on any such report may result in the imposition of criminal penalties as provided for in NCGS 143-215.6B or in Section 309 of the Federal Act.

11. **Omissions**
Where the Permittee becomes aware that it failed to submit any relevant facts in a Notice of Intent to be covered under this general permit, or submitted incorrect information in that Notice of Intent application or in any report to the Director, it shall promptly submit such facts or information. [40 CFR 122.41(l)(8)]

# PART V   DEFINITIONS

1. **Act**
   See Clean Water Act.

2. **Adverse Weather**
   Climate conditions that are dangerous or create inaccessibility for personnel, such as local flooding, high winds, electrical storms, winter weather conditions, or situations that otherwise make inspections impractical. When adverse weather or site conditions prevent or restrict access to complete a regular or rain event inspection, this should be clearly documented on the next issued report. Documentation should include the inspector's name, the date and time, and a written narrative of the adverse weather or site condition. Adverse weather or site conditions do not exempt the permittee from having to file an inspection report in accordance with Section II. B of this permit.

3. **Allowable Non-Stormwater Discharges**
   This general permit regulates stormwater discharges.  Non-stormwater discharges which shall be allowed in the stormwater conveyance system are:

   (a) All other discharges that are authorized by a non-stormwater NPDES permit.

   (b) Uncontaminated groundwater, foundation drains, air-conditioner condensate without added chemicals, springs, discharges of uncontaminated potable water, waterline and fire hydrant flushings, water from footing drains, and irrigation waters, flows that do not result in a water quality standards violation.

   (c) Discharges resulting from fire-fighting or fire-fighting training, or emergency shower or eye wash as a result of use in the event of an emergency.

4. **Best Management Practices (BMPs)**
   Measures or practices used to reduce the amount of pollution entering surface waters.  BMPs may take the form of a process, activity, or physical structure

5. **Bypass**
   The known diversion of stormwater from any portion of a stormwater control facility including the collection system, which is not a designed or established operating mode for the facility.

6. **Certificate of Coverage**
   The cover sheet that accompanies a general permit upon issuance and lists the facility name, location, receiving stream, river basin, effective date of coverage under the general permit and is signed by the Director.

7. **Clean Water Act**
   The Federal Water Pollution Control Act, also known as the Clean Water Act (CWA), as amended, 33 USC 1251, et. seq.

8. **Common Plan of Development**
   A contiguous area where multiple separate and distinct land disturbing activities may be taking place at different times and on different schedules under one common plan.  The "common plan" of development or sale is broadly defined as any announcement or piece of documentation (including a sign, public notice or hearing, sales pitch, advertisement, drawing, permit application, zoning request, computer design, etc.) or physical demarcation (including boundary signs, lot stakes, surveyor markings, etc.) indicating construction activities are planned to occur on a specific plot regardless of ownership of the parcels..

9. **Concrete Washout**
   Wastewater resulting from the washing of equipment such as trucks, chutes, hoses, mixers, hoppers, wheelbarrows, and tools that are used to produce, handle, or store concrete and other cementitious materials such as mortar, plaster, stucco, or grout.

10. **Control Measure**
    Any BMP or other structural or non-structural practice or procedure used to prevent or reduce the discharge of pollutants including practices to control erosion and sedimentation.

11. **Division or DEMLR**
    The Division of Energy, Mineral, and Land Resources of the NC Department of Environmental Quality (DEQ).

12. **Director**
    The Director of the Division of Energy, Mineral, and Land Resources of the NC Department of Environmental Quality (DEQ).

13. **EMC**
    The North Carolina Environmental Management Commission.

14. **Erosion and Sedimentation Control (E&SC) Plan**
    A plan developed in compliance with the North Carolina Sedimentation Pollution Control Act of 1973 in G.S. 113A-50 et seq. to prevent sediment resulting from accelerated erosion from being transported off the site of the land-disturbing activity or in waters.

15. **Erosion and Sedimentation Control (E&SC) Plan Authority**
    The entity responsible for reviewing and approving the Erosion and Sediment Control Plan. Within some local governments' jurisdictions, this will be a delegated program. Elsewhere, it will be the Division.

16. **Erosion and Sediment Control (E&SC) Measure**
    Temporary and permanent practices and devices to prevent sediment resulting from accelerated erosion from being transported off the site of the land-disturbing activity or in waters of the State of North Carolina. E&SC measures, include, but are not limited to, sedimentation traps, sedimentation ponds, rock dams, temporary diversions, temporary slope drains, rock check dams, sediment fence or barriers, all forms of inlet protection, storm drainage facilities, energy dissipaters and stabilization methods of open channels.

17. **Ground Cover**
    Any vegetative growth or other material which, when applied to the soil surface, renders the soil surface stable against accelerated erosion.

18. **Hazardous Substance**
    Any substance designated under 40 CFR Part 116 pursuant to Section 311 of the Clean Water Act.

19. **Landfill**
    A disposal facility or part of a disposal facility where waste is placed in or on land and which is not a land treatment facility, a surface impoundment, an injection well, a hazardous waste long-term storage facility or a surface storage facility.

20. **Normal Business Hours**
    These are generally considered to be between the hours of 6 a.m. and 6 p.m., or when workers are normally present on the construction site. Weekends, state and federal holidays are not considered normal business hours unless construction activities are taking place on the site during those times.

**21. Notice of Intent**
The state application form which, when submitted to the Division, officially indicates the facility's notice of intent to seek coverage under a general permit.

**22. Permanent Stabilization**
When all soil disturbing activity is completed and exposed soils have been stabilized with a vegetative cover with a density of at least 80% or covered with a structural stabilization method. Permanent perennial vegetation may include the use of sod, shrubs and ground cover plants mixed with mulching, aggregate or other landscaping techniques. Structural methods include concrete, asphalt, retaining wall or other stabilization techniques.

**23. Permittee**
The person, firm or organizational entity that signed as the financially responsible party on the Erosion and Sedimentation Control Plan.

**24. Point Source Discharge of Stormwater**
Any discernible, confined and discrete conveyance including, but not specifically limited to, any pipe, ditch, channel, tunnel, conduit, well, or discrete fissure from which stormwater associated with industrial activity is or may be discharged to waters of the state.

**25. Secondary Containment**
Spill containment for the contents of the single largest tank within the containment structure plus sufficient freeboard to allow for the 25-year, 24-hour storm event.

**26. Section 313 Water Priority Chemical**
A chemical or chemical category which:
(a) Is listed in 40 CFR 372.65 pursuant to Section 313 of Title III of the Superfund Amendments and Reauthorization Act (SARA) of 1986, also titled the Emergency Planning and Community Right-to-Know Act of 1986;
(b) Is present at or above threshold levels at a facility subject to SARA title III, Section 313 reporting requirements; and
(c) Meets at least one of the following criteria:

- Is listed in appendix D of 40 CFR part 122 on Table II (organic priority pollutants), Table III (certain metals, cyanides, and phenols) or Table IV (certain toxic pollutants and hazardous substances);
- Is listed as a hazardous substance pursuant to section 311(b)(2)(A) of the CWA at 40 CFR 116.4; or
- Is a pollutant for which EPA has published acute or chronic water quality criteria.

**27. Soil Stabilization**
The use of vegetative, physical or chemical coverage techniques that will restrain accelerated erosion on disturbed soils for temporary or permanent control needs.

**28. Stormwater Discharge Outfall (SDO)**
The point of departure of stormwater from a discernible, confined, or discrete conveyance, including but not limited to, storm sewer pipes, drainage ditches, channels, spillways, or channelized collection areas, from which stormwater flows directly or indirectly into waters.

**29. Stormwater Runoff**
The flow of water which results from precipitation and which occurs immediately following rainfall or as a result of snowmelt.

**30. Stormwater Associated with Industrial Activity**
The discharge from any point source which is used for collecting and conveying stormwater and which is directly related to manufacturing, processing or raw material storage areas at an industrial site. Facilities considered to be engaged in "industrial activities" include those activities defined in 40 CFR 122.26(b)(14). The term does not include discharges from facilities or activities excluded from the NPDES program.

**31. Stormwater Pollution Prevention Plan (SWPPP)**
The elements of the State's stormwater pollution prevention program that provide the technology-based requirements designed to protect the state's waters from the adverse impacts of sediments. In North Carolina, the SWPPP for construction activities includes the Erosion and Sedimentation Control Plan, Ground Stabilization, Materials Handling, and Disturbed Area Limit for Special and Threatened Waters.

**32. Temporary Stabilization**
When the establishment of ground cover over all disturbed areas (such as mulching, rolled erosion control products, vegetation, or other material) renders the surface stable against accelerated erosion. Stabilization shall be achieved with the establishment of a uniform and evenly-distributed (i.e., without large bare areas) ground cover with a cover density of at least 80%.

**33. Toxic Pollutant**
Any pollutant listed as toxic under Section 307(a)(l) of the Clean Water Act.

**34. Upset**
An exceptional incident in which there is unintentional and temporary noncompliance with technology-based permit effluent limitations because of factors beyond the reasonable control of the permittee. An upset does not include noncompliance to the extent caused by operational error, improperly designed treatment or control facilities, inadequate treatment or control facilities, lack of preventive maintenance, or careless or improper operation.

**35. Visible Sedimentation**
Solid particulate matter, both mineral and organic, that has been or is being transported by water, air, gravity, or ice from its site of origin that can be seen with the unaided eye.

**36. 25-year, 24-hour Storm Event**
The maximum 24-hour precipitation event expected to be equaled or exceeded, on the average, once in 25 years.